QUOCK HOY MING et al. v. NAGLE, Immigration Com'r.

No. 6485.

Circuit Court of Appeals, Ninth Circuit.

Jan. 5, 1932.

J. H. Sapiro, of San Francisco, Cal., for appellants.

George J. Hatfield, U. S. Atty., and H. A. Van Der Zee, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

WILBUR, Circuit Judge.

This is an appeal from the denial of petition for writ of habeas corpus. By stipulation the entire record before the immigration authorities is made a part of the petition. The appellants were denied admission into the United States and ordered deported by the immigration authorities. Appellants claim to be the sons of Quock Yuen, who is conceded to be an American citizen, and base their right to admission upon that relationship. The immigration authorities rejected the testimony of applicants and their alleged father on the ground of discrepancies in their testimony. Appellants contend that they were not given a fair trial by immigration authorities. One of the allegations in that regard is that the interpreters who translated the questions and answers during the examination of applicants and their father were unfamiliar with the dialect used by the appellants and that the conduct of the trial with incompetent interpreters was for that reason unfair. This question was raised by the appellants before the Board of Review and was investigated by the Board. As a result of that investigation instigated by the appellants, the Board of Review concluded that the interpreters were familiar with the dialect of the appellants, were daily engaged in interpretations in that dialect, and that the dialect actually spoken by the appellants in their examination was not the Hock San dialect, but the dialect used in Canton City with which the interpreters were very familiar, and that the father testified in the Sun Woey District dialect, which was in daily use before the Board of Special Inquiry.

In view of this express decision upon the exact point raised by the appellants we find no basis upon which to predicate a conclusion that the interpreters were incompetent. There was a frequent change of interpreters, appellants were asked to speak in the Sun Woey dialect, evidently for the purpose of testing the truth of their story as to their having lived in and having come from that district, and although appellants were admonished to testify in the Sun Woey District dialect it is found that each of them quickly relapsed into the Canton City dialect. This situation as shown by the record is entirely consistent with the theory that the difficulties of interpretation resulted from the unfamiliarity of the appellants with the dialect with which they professed to be familiar.

At the argument appellants' counsel was asked to point out the portion of the record which indicated the capacity of the interpreters and to indicate misinterpretation, if any, in the record. In response to that suggestion a brief was filed calling attention to some features of the examination which he contends arose from the inability of the witnesses to understand the interpreters, and vice versa. To these difficulties he attributes some of the discrepancies relied on by the immigration authorities as a basis of rejecting the testimony of the applicants. With-

out going into details, it is sufficient to say that there is no clear indication in the record that any serious difficulties arose from interpretation.

It is true that when the matter was first presented to the Board of Review on August 22, 1930, they stated "the testimony shows considerable confusion and numerous changes and corrections which seem to be due to the fact that the applicants speak an unusual dialect which some of the interpreters had difficulty in understanding." After the further investigation of that matter on October 8, 1930, their conclusion, based upon the record as it stood at that time, stated that the Commissioner's report shows that the interpreters who officiated were fully qualified in the dialect of the applicants.

The Board of Review set out in its opinion a number of discrepancies upon which it based its rejection of the testimony offered on behalf of the appellants. One of these related to the immediate family of the applicants' alleged father. The alleged father testified that his wife had no brothers, and that her mother lived in a village about two-thirds of a mile distant from that in which his wife and sons resided, that he had visited her occasionally, and that the last time he visited his mother-in-law's home in 1928 no one was living with her. Appellant Quock Hoy Ming testified that appellants visited their grandmother in 1928; that his uncle Leung Yin, his mother's blood brother, his wife, son, and daughter, were then living in the home of the grandmother; that his mother had one brother and no sisters. He gave the name of his uncle and the uncle's wife, Look Shee, and the two children then living with them in the home of the grandmother as Leung Jin Yuen, 17 or 18 years old, and Leung Ong Yee, a daughter about 19 years old. He stated that appellants had frequently visited the grandmother and that his maternal uncle, Leung Yin, always lived with the maternal grandmother; that appellants had visited her as often as three or four times a year.

The other appellant, Quock Hoy Sing, at first testified that when he visited his maternal grandmother no one was living with her, that his mother had no brothers or sisters, that she was the only child of her parents, that he had visited the grandmother at Sew Kew Village, three or four times a year, and that no one else lived with her although he had seen some of her neighbors in the house, and the next day he changed his testimony and stated that his mother had only one brother named Leung Yin, that he lived with appellants' maternal grandmother, that he

had a wife but did not know whether he had any children or not.

The alleged father testified consistently that his wife never had a brother. The only explanation of this discrepancy offered by appellants in their brief in this court is the alleged difficulties in interpretation and the fact that cousins were sometimes spoken of as uncles. The question before us, however, is not one of reconciling discrepancies and of arriving at the ultimate truth by weighing the evidence before the Board, but merely to determine whether or not the rejection of appellants' testimony has been so arbitrary and unreasonable as to constitute a denial of a fair hearing. In view of this discrepancy as to the immediate members of the family of the appellants, we cannot say that the rejection of this testimony was so unreasonable as to justify a conclusion that appellants have not had a fair hearing before the immigration authorities. In this connection it should be stated that the appellants applied for admission on June 17, 1930 and the final action by the Board was not taken until October 8, 1930.

Order affirmed.